John K. White and Others, as Trustees under a Certain Declaration of Trust Made by Them Dated and Filed July 1, 1938, in the Office of the Clerk of the United States District Court for the Eastern District of New York in Proceedings Entitled " In the Matter of Nassau-Suffolk Bond and Mortgage Guarantee Company, Debtor, No. 28892," Respondents, *v.* Gladys M. Wielandt and Theodore H. Wielandt, Appellants, and Fred S. Radnitz and Others, Defendants.*†

Second Department, June 17, 1940.

*Charles C. Peters,* for the appellants.

*Francis B. Hamlin* [*August J. Hovorka, Jr.,* with him on the brief], for the respondents.

* Revg. 172 Misc. 686. † Decision and opinion amended on October 15, 1940. (See 260 App. Div. ——.)

JOHNSTON, J. The specific question to be determined may be stated as follows: Where, based upon a default in the payment of principal, interest and taxes, the usual action to foreclose a mortgage is instituted and a deficiency judgment is sought, computed on the total amount due for principal, interest and taxes, is it proper to incorporate in the complaint additional causes of action for a money judgment against the obligors on the bond for the unpaid interest and the taxes paid by the mortgagee?

The complaint contains four causes of action: (1) To foreclose a mortgage given to secure a bond executed by the defendants Wielandt for $30,000, with interest at six per cent payable semi-annually; (2) to recover the semi-annual installment of interest amounting to $900, which became due May 1, 1939; (3) to recover town taxes paid by plaintiffs, amounting to $635.97; (4) to recover school taxes paid by plaintiffs, amounting to $132.43. In the first cause of action plaintiffs ask for the usual judgment of foreclosure and sale and the entry of the usual deficiency judgment against the appellants, such deficiency judgment to include principal, interest and taxes. In the second, third and fourth causes of action plaintiffs ask for separate money judgments against the obligors for the amount of the interest and taxes.

In their answer appellants, in effect, admit the allegations of the complaint and set up defenses to the joinder of the second, third and fourth causes of action and challenge plaintiffs' right to recover thereon while, at the same time, seeking to foreclose the mortgage. Plaintiffs moved to sever these three causes of action and for judgment. Defendants made a cross-motion to dismiss them as insufficient in law. The County Court denied appellants' cross-motion, granted plaintiffs' motion, and directed judgment on the said three causes of action for interest and taxes, with a proviso, however, that such judgment shall not "forfeit or prejudice the right of plaintiffs, if so advised, to proceed to foreclosure for principal only of the mortgage in the event that the defaults in payment of interest and taxes are not remedied."

The court, in effect, held (a) that the provisions of sections 1083 and 1083-a of the Civil Practice Act do not prevent plaintiffs in this foreclosure action from incorporating in the complaint separate causes of action for interest and taxes and obtaining a separate judgment thereon; and (b) that, despite the pendency of the foreclosure action, plaintiffs may prosecute the separate causes of action for interest and taxes without first obtaining the permission of the court, as required by section 1078 of the Civil Practice Act. This holding is on the theory that interest and taxes are separate from the mortgage debt, independent of it and do not constitute any part thereof.

In my opinion in this case the interest and taxes constitute an integral part of the mortgage debt and, hence, a separate action for the recovery of such interest and taxes may not be maintained concurrently with the action to foreclose the mortgage, which is predicated on defaults in the payment of principal, interest and taxes.

It has been held that, despite the moratorium statutes (Civ. Prac. Act, §§ 1077-b, 1083-b), the mortgagee may maintain an independent action at law for the recovery of unpaid interest or taxes paid by him; that in such an action the mortgagor may not set off the value of the property; and that the prosecution of such an action is without prejudice to a subsequent action by the mortgagee to recover the principal or to foreclose the mortgage. (*Johnson* v. *Meyer*, 242 App. Div. 798; affd., 268 N. Y. 701; *Werbelovsky* v. *Rosen Bros. News Agency, Inc.*, 249 App. Div. 758; *Buell* v. *Sullivan*, 250 id. 780; *Westchester Trust Co.* v. *Estate of Underhill, Inc.*, 255 id. 1013; *Weinstein* v. *Empire Title & Guarantee Co.*, 257 id. 867; *Rochester Trust & Safe Deposit Co.* v. *Hatch*, 273 N. Y. 507; *Erie County Savings Bank* v. *Levi*, 255 App. Div. 438; *Union Trust Co. of Rochester* v. *Kaplan*, 249 id. 280.) In some of these cases causes of action to recover the interest and taxes were alleged in addition to a cause of action to recover the principal, and the three causes of action were incorporated in one complaint. In *Rochester Trust & Safe Deposit Co.* v. *Hatch* (*supra*) it was expressly held that in such a case the defense or offset of the market value, under section 1083-b of the Civil Practice Act, may be interposed only as against the cause of action for the principal.

In none of these cases, however, was a cause of action to recover interest or taxes joined with a cause of action to foreclose the mortgage in which a deficiency judgment was demanded; and in none of them was the propriety of such a practice raised or decided.

The rationale behind all these cases is that interest and taxes are not affected by the moratorium statutes, which suspend actions on bonds for default in the payment of principal only, and which allow the fair value of the property to be offset when an action is brought to recover the indebtedness secured by a mortgage and *which originated simultaneously therewith;* that interest and taxes are not affected because they did not originate *simultaneously* with the indebtedness and, hence, they are not part of such indebtedness within the purview of these statutes, and an action is maintainable for their recovery without prejudice to the mortgagee's right to maintain a subsequent action to recover the debt. To allow this to be done, it was held, would not result in the splitting

of a cause of action because the moratorium statutes created an anomalous situation. They prevented the mortgagee from maintaining an action for the principal only; but a default in the payment of interest and taxes was beyond the protection afforded by such moratorium statutes. The statutes thus effected a legal severance to the extent that if interest and taxes are paid, the principal need not be paid. In other words, payment of the interest and taxes suspends the payment of principal. Hence, it was concluded that for a failure to pay the interest and taxes the anomalous situation created by the emergency statutes sanctioned, if it did not authorize, an independent action for the recovery of the interest and taxes. (*Union Trust Co. of Rochester* v. *Kaplan, supra; Westchester Trust Co.* v. *Estate of Underhill, Inc., supra.*)

The emergency statutes were thus construed and these cases were thus decided primarily for the purpose of preventing the owner from keeping the property while, at the same time, evading his responsibility to pay not only the principal but also the interest and taxes — an abuse which necessarily would result from any other interpretation of the moratorium statutes. Therefore, interest and taxes must be deemed severable from and not a part of the mortgage debt only in determining the scope of moratorium statutes.

Under no other circumstances has it been held that interest and taxes are not part of the mortgage debt. It would shock the average mortgagee if he were told that the unpaid interest, and taxes paid by him, were not part of the mortgage debt and not secured by the mortgage. Every bond and mortgage on their face show an unmistakable intent that the debt secured by the mortgage shall be not only the principal, but also any interest which may accrue thereon and any sums which the mortgagee is required to advance to protect his security. In fact, the law expressly provides that a covenant " that the mortgagor will pay the indebtedness," must be construed to mean that the mortgagor agrees to pay " the principal sum of money secured by said mortgage, and also the interest thereon as provided by said mortgage " (Real Prop. Law, § 254, subd. 3); and a covenant " that the mortgagor will pay all taxes, assessments or water rates and in default thereof, the mortgagee may pay the same," must be construed to mean that in default of the payment thereof the mortgagee may pay such taxes, etc., and that " the mortgagor will repay the same with interest, and the same shall be liens on said premises and secured by the mortgage." (Real Prop. Law, § 254, subd. 6.) These covenants are standard provisions in almost every mortgage, and in the instant case the complaint alleges that the mortgage contained such standard provisions. What is even more conclusive

as showing that the interest and taxes have become part of the mortgage debt is the fact that plaintiffs in their complaint have added these items to the principal, and seek foreclosure and a deficiency judgment based on the total amount. That is plaintiffs' own interpretation of their mortgage.

Therefore, the interest which accrued and remains unpaid is secured by the mortgage and becomes part of the mortgage debt. The same result ensues when the mortgagee, under the authority granted to him by the mortgage, pays the taxes. But whatever doubt there may be on this point has been eliminated by the fact that plaintiffs, in their complaint, have elected to treat the interest and taxes as part of the mortgage debt.

We must not lose sight of one of the fundamental purposes of the moratorium statutes, namely, that in a proceeding to recover the mortgage debt, either by an action to foreclose the mortgage or by an action upon the debt, a personal judgment shall not be rendered against the mortgagor or obligor on the bond without crediting the fair value of the mortgaged property against the debt. In other words, that the mortgagee should not be allowed to compel a sale of the mortgaged property either to himself or to a third party at a distress price and then obtain a deficiency judgment against the mortgagor; that if the mortgagee elects to have a forced sale, either in a foreclosure action or by issuing execution upon a judgment obtained in an action to recover the mortgage indebtedness, he must first credit the mortgagor with the fair value of the mortgaged property. As stated by LEHMAN, J.: " Section 1083-a is intended to provide an exclusive procedure for the entry of a judgment for any residue of a debt secured by mortgage after sale of the mortgaged premises." (*Honeyman* v. *Hanan*, 275 N. Y. 382, 392.) In the instant case the plaintiffs are attempting to circumvent this fundamental purpose of the moratorium statutes. Thus, if the decision of the lower court be upheld, plaintiffs or some third party are sure to obtain the mortgaged property at a sacrifice price and plaintiffs will also have a money judgment against the mortgagors — all without regard to the fair value of the property — which the statute commands shall first be offset, unless the property be taken in full satisfaction of the mortgage debt. Here the fair value of the mortgaged property, together with the amount of the judgment which the plaintiffs already have obtained, may very well exceed the total amount due plaintiffs, including the interest and taxes. To permit this would frustrate the purpose of the Legislature in adopting the moratorium statutes.

Not only was it the purpose of the moratorium statutes, during the emergency, to prevent the sacrifice of the mortgaged property

without giving the mortgagor credit for its fair value, but it has become the permanent policy of the State. The Legislature, by chapter 510 of the Laws of 1938, has amended section 1083 of the Civil Practice Act so that with respect to the right to offset the fair value of the mortgaged property it now reads identically the same as the emergency statute (§ 1083-a). / Of course, section 1083 is applicable to all existing and future mortgages, while section 1083-a is confined to the period of the emergency and to mortgages executed before July 1, 1932.

The effect of the amendment to section 1083 is that in an action to foreclose a mortgage a court of equity is vested with the power to control and direct the entry of a deficiency judgment for the residue of the mortgage debt " or so much thereof as the court may determine to be just and equitable." (Civ. Prac. Act, § 1083; *National City Bank of New York* v. *Gelfert*, 257 App. Div. 465.) Therefore, when a mortgagee seeks foreclosure of his mortgage, the court has power to make an order to prevent him from circumventing the law and obtaining, in effect, a deficiency judgment without regard to the value of the mortgaged property. That would be the result if plaintiffs here be permitted to combine actions at law for interest and taxes with their action to foreclose the mortgage.

To sanction this procedure would also offend the well-settled policy of the law not to countenance more than one action at a time to recover the mortgage debt or any part thereof. (Civ. Prac. Act, §§ 1077, 1078; *Equitable Life Ins. Society* v. *Stevens*, 63 N. Y. 341; *Reichert* v. *Stilwell*, 172 id. 83; *Jamaica Savings Bank* v. *M. S. Investing Co.*, 274 id. 215; *President & Directors of Manhattan Co.* v. *Callister Brothers, Inc.*, 256 App. Div. 1097; affd., 282 N. Y. 629.) " The peculiar statutory provisions applicable to actions of foreclosure above referred to indicate that it was never intended to permit the joinder in the same complaint of two separate causes of action, one at law to recover a personal judgment on the bond for the debt, and the other in equity to procure a sale of the land covered by the mortgage, given to secure the same debt and the application of the proceeds thereon." (*Dudley* v. *Congregation, etc., of St. Francis*, 138 N. Y. 451, 458.)

The aim of these statutes (Civ. Prac. Act, §§ 1077 and 1078) is to compel a mortgagee, who elects to foreclose his mortgage, to obtain in the foreclosure action all the relief to which he is entitled; and if for any reason he fails to do so he must, in order to obtain permission of the court to maintain an action upon the debt secured by the mortgage, show good reason for his failure; and he takes the hazard of obtaining such permission. (*Scofield* v. *Doscher*, 72 N. Y. 491; *Matter of Byrne*, 81 App. Div. 74; *Matter*

*of Marshall,* 53 id. 136; *Darmstadt* v. *Manson,* 144 id. 249; *Vanderbilt* v. *Schreyer,* 91 N. Y. 392; *Morrison* v. *Slater,* 128 App. Div. 467; *Robert* v. *Kidansky,* 111 id. 475.) Since the purpose of the statutes is to dispose of the entire matter in one proceeding, leave to sue is never granted as matter of course. As stated by this court: " The statute is a restriction to confine all proceedings to collect the mortgage debt to one court and one action. Good reasons must be shown why defendants in foreclosure should be called on to answer again in an action at law." (*Carlin* v. *Lindtveit,* 175 App. Div. 940.) Moreover, in recognition of this statutory provision, rule 255 of the Rules of Civil Practice expressly requires that " The complaint in an action to foreclose a mortgage upon real property must state whether any other action has been brought to recover any part of the mortgage debt, and, if so, whether any part thereof has been collected." The complaint in the instant case contains an allegation that no such action has been brought. This allegation is not accurate because a cause of action to recover part of the mortgage debt has been incorporated in the same complaint and is pending.

Plaintiffs make the lame argument that the statutory provisions just referred to are applicable to bar only two separate actions: One to foreclose and another to recover the mortgage debt. This is mere evasion. The statutory provisions prevent the joining of two or more causes of action in one complaint as well as the concurrent prosecution of separate actions. In any event, the severance which has been directed by the lower court, in effect, will result in two actions and two judgments.

Plaintiffs rely on *Rossbach* v. *Aurora Holding Corp.* (252 App. Div. 842), where the court sustained a complaint in which a cause of action to foreclose the mortgage was joined with causes of action at law to recover interest and taxes. For the reasons heretofore stated, we decline to follow that decision.

The order and judgment entered thereon should be reversed on the law and the facts, with ten dollars costs and disbursements, respondents' motion for judgment on the pleadings denied, and appellants' cross-motion for judgment dismissing the second, third and fourth causes of action granted, with ten dollars costs.

Lazansky, P. J., Hagarty, Taylor and Close, JJ., concur.

Order of the County Court of Nassau county and judgment entered thereon reversed on the law and the facts, with ten dollars costs and disbursements, respondents' motion for judgment on the pleadings denied, and appellants' cross-motion for judgment dismissing the second, third and fourth causes of action granted, with ten dollars costs.